UNITED STATES OF AMERICA

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| ANTOLIN ANDREW MARKS | Case No. C07-1897MJP |
|---|---|
| Petitioner, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR SANCTIONS |
| NEIL CLARK, | |
| Respondent. | |

The above-entitled Court, having reviewed:

1. Magistrate Judge James P. Donohue's Report and Recommendation, which recommended denying Petitioner's petition for writ of habeas corpus;

2. Petitioner's (1) Amended Opposition to Magistrate Judge Donohue's Recommendation and Motion for Sanctions and (2) Motion for Judicial Notice;

3. The record (Dkt. Nos. 6, 11, 12, 13, 14, 16, 18, 21, 22, 32, 33, 35);

4. Petitioner's Motion for Leave to File a Surreply (Dkt. No. 36);

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that the Court adopts the Report and Recommendation[1] and Petitioner's Petition for Writ of Habeas Corpus is DISMISSED;

IT IS FURTHER ORDERED the Petitioner's Motion for Leave to File a Surreply is DENIED;

---

[1] While this Court adopts the R & R's ultimate conclusions and much of its reasoning, there are some issues for which this Court wishes to put its own analysis on the record.

ORDER — 1

IT IS FURTHER ORDERED that Petitioner's Motion for Sanctions against the respondent is DENIED.

**Background**

Magistrate Judge Donohue's Report and Recommendation (R & R) details Petitioner's history with the U.S. Immigration and Customs Enforcement ("ICE"). (R & R at 2-6.) In brief, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by ICE. ICE has detained Petitioner for over thirteen months, while awaiting deportation to Trinidad. The Government asserts that Petitioner has used over fifty aliases, including the alias "Wayne Ricky Ellison Rudder." See Hopper v. Clark, No. C05-1812, 2006 WL 3404935, at *1 (W.D.Wash. Nov. 20, 2006).[2] In August 2005, a fingerprint comparison performed by Department of Homeland Security (DHS) Forensic Document Laboratory showed that petitioner's fingerprints match those of Wayne Rudder, a native citizen of Trinidad who entered the United States in 1974 as an immigrant and was deported to Trinidad in 1993. Id. at 4. The Government also asserts that Petitioner illegally reentered the U.S. in 1994. Id. at 3. ICE took custody of Petitioner in August 2005 and placed him in removal proceedings. Id. at 4. On December 1, 2007, the Immigration Judge issued an order of removal to Trinidad and Tobago against Petitioner (see Resp't's Return, Ex. A), and bond was denied. (Id., Ex. B.) Subsequently, both the Bureau of Immigration Appeals ("BIA") and the Ninth Circuit dismissed Petitioner's appeals. (Id. at 6; see Pet'r's Amended Opp'n to R & R at 17.) Petitioner is now subject to a final order of removal and is awaiting confirmation of citizenship and travel documents from Trinidad. (Resp't's Return at 7.) Petitioner's post-removal detainment commenced on June 25, 2007—the date that the Ninth Circuit dismissed Petitioner's Petition for Review—and as of August 2008 he has been detained for over thirteen months.

On December 11, 2007, Petitioner filed this habeas petition—his fifth—under 28 U.S.C.

---

[2] Hopper v. Clark was Petitioner's previous habeas petition brought before Judge Lasnik and Magistrate Judge Theiler.

ORDER — 2

§ 2241. Petitioner claims that he is a United States citizen and that the Trinidad government will not issue a travel document to him. (Pet'r's Amended Opp'n to R & R at 4; See Giles Decl. No. 2.) ICE contacted the Trinidad government in December 2007 and January 2008 regarding petitioner's return to Trinidad. (Giles Decl. No. 1 at 1.) An ICE official stated on February 1, 2008 that the Trinidad government should complete its investigation into Petitioner's citizenship by mid-February 2008. (Giles Decl. No. 2.) ICE also stated in February 2008 that it has continued to work with the Trinidad government to obtain travel documents for Petitioner. (Resp't's Reply at 4.) In June 2008 Petitioner claimed that the Trinidad government had concluded its investigation, denied travel documents for Petitioner's removal, and contacted ICE with this decision. (Am. Opp. to R & R at 10.) Because the Court had not received any new information from ICE regarding the investigation, the Court issued an Order on August 14, 2008 directing the parties to provide updated information on Trinidad's investigation and Petitioner's travel documents. (Dkt. No. 30.)

In response to the Order, Petitioner submitted (among other things) declarations—one from his friend Lyla Paul and one from himself—in support of his claim that Trinidad had denied travel documents for his removal. (See Pet'r's Opp. to the Mot. to Dismiss, Exs. B & C.) The Government submitted a declaration by ICE Field Office Director Neil Clark who stated that he personally met Trinidad Immigration official, Guy Benjamin, at the Trinidad Embassy in July 2008. Mr. Clark avers that Mr. Benjamin "advised there was little doubt concerning the citizenship of Wayne Ricky Rudder," and that "the only question remaining is how to amend their emergency travel document" because Trinidad's emergency travel document normally requires the document holder to assert Trinidad citizenship. (Decl. of A. Neil Clark at 1.) Mr. Benjamin further disclosed that because Petitioner refused to assert citizenship, the Embassy referred the case back to Mr. Edwards, Trinidad's head of Immigration, for authorization to amend the assertion of citizenship requirement on the document. (Id. at 1-2.) The Government attests that it has since attempted to contact Mr. Edwards "on 3 or 4 occasions" to determine

ORDER — 3

whether the necessary change has been authorized by the Trinidad government but "was unable to speak with Mr. Edwards directly, as he was either out of the office or in meetings." (Id. at 2.)

**Discussion**

**I.**

Section 241(a)(1)(A) of the Immigration and Naturalization Act ("INA") provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days [the "removal period"]." The Attorney General shall detain the alien throughout the removal period. INA § 241(a)(2). Furthermore, when an alien is ordered removed, the alien "may be detained beyond the removal period." INA § 241(a)(6). In Zadvydas v. Davis, the Supreme Court held that the post-removal period provision of the INA "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. 678, 689 (2001). The Supreme Court also established a presumptively reasonable post-removal detention period of six months. Id. at 701. After six months of post-removal detention, if an alien demonstrates that there is "no significant likelihood of removal in the reasonably foreseeable future" and the Government cannot "respond with evidence sufficient to rebut that showing," the alien must be released. Id.

In this case, Petitioner has been detained for fourteen months post-removal as of August 2008—eight months beyond the Zadvydas presumptive post-removal period of six months. Judge Donohue concluded in his R & R, however, that Petitioner "has failed to satisfy his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." (R & R at 6.) This Court agrees with the R & R.

First, unlike in Zadvydas where there were no countries that were willing to accept the petitioners, see id. at 684-86, the Trinidad Embassy has been processing the Government's request for travel documents (See Giles' Decl. No. 2 at 1) and investigating whether Petitioner is a citizen and whether Trinidad will issue him a travel document. (See id.) Further, Trinidad

ORDER — 4

notified ICE that it would conclude its investigation by mid-February 2008. (Id.) Also, the Embassy is currently awaiting authorization from Trinidad to amend Petitioner's travel document so as to effectuate his removal. (Decl. of A. Neil Clark at 1-2.) Although Petitioner's Declaration of Lyla Paul claims that Trinidad has denied or will deny his travel documents, the declaration is dated in March 2008—five months before the latest information provided by the Government and the Trinidad Embassy on August 26, 2008. This latest update on the status of Petitioner's travel documents indicates that removal is likely and impending. (See Decl. of A. Neil Clark.) Thus, Petitioner cannot satisfy his burden to demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future.

Second, as Judge Donohue's R & R points out, even if Petitioner's circumstances establish that "there is no significant likelihood of removal in the reasonably foreseeable future," the Government may "respond with evidence sufficient to rebut that showing." See Zadvydas, 533 U.S. at 701. The Government can make such a showing under INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), which provides that "the removal period shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ." The Ninth Circuit applied this provision in Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003). Pelich was ordered removed to Germany or Poland. Germany denied entry to Pelich, and Pelich refused to cooperate with efforts to obtain Polish travel documents. Id. at 1058. The Ninth Circuit found that "Pelich himself is responsible for his plight" because he had refused to fill out a Polish passport application, thereby impeding Poland's ability to determine whether it should issue Pelich travel documents. Id. at 1059. Moreover, Pelich further compounded the situation by "provid[ing] the INS with conflicting information regarding his name, his parents' name, his parents' birthplaces and residences, his birthplace and his nationality." Id. Accordingly, the Ninth Circuit held that "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to

ORDER — 5

show there is no significant likelihood of removal in the reasonably foreseeable future." Id.

Similarly, in Lema v. I.N.S., 341 F.3d 853 (9th Cir. 2003), the Government determined that the petitioner Lema was an Ethiopian national and had Lema apply to the Ethiopian Embassy for appropriate travel documents. Id. at 854-55. Ethiopia denied Lema's application because of his lack of cooperation:

> Because Lema said he was Eritrean, Ethiopian officials decided not to grant him travel documents. Lema has not reapplied to Ethiopia for travel documents or furnished evidence corroborative of his Ethiopian nationality to Ethiopia despite a request by the INS that he do so.

Id. at 855. Because Lema refused to cooperate fully with officials to secure travel documents, the Court could not "ascertain the alien's chance of removal." Id. at 856-57. Lema's habeas petition was therefore dismissed.

Like the petitioners in Pelich and Lema, Petitioner in this case has refused to cooperate with efforts to obtain travel documents from Trinidad. Petitioner's fingerprints match those of Wayne Rudder, a citizen of Trinidad. Petitioner filled out both an application for an emergency certificate travel document and an INS document in 2007 using the name Rudder in his own handwriting. (Pet'r's Mot. for Extension of Time, Exs. A & 1.) The Immigration Judge (IJ) issued a final order of removal and the BIA and the Ninth Circuit dismissed Petitioner's appeals. (Resp't's Return at 6; Resp't's Ex. A.) These facts belie Petitioner's current assertion that he is a U.S. citizen. (Pet'r's Amended Opp'n to R & R at 4; Giles Decl. No. 1 at 2.) Further, Petitioner has also threatened to sue Trinidad if he is deported there. (Giles Decl. No. 1 at 2.) Through his insistence on U.S. citizenship and his threats to Trinidad, Petitioner has demonstrated his unwillingness to cooperate in efforts to obtain travel documents. In fact, some of his actions such as his letters to the Trinidad Embassy (Pet'r's Mot. for Extension of Time, Exs. B & G) show that he has actively attempted to hinder such efforts. The letters insist that he is a U.S. citizen and provide unsupported information and immaterial documents to sustain his alleged U.S. citizenship. Additionally, Petitioner asserts that his numerous requests for travel documents from other countries indicate his cooperation. These other requests, however, are irrelevant to

ORDER — 6

the issue at hand: the procurement of travel documents from *Trinidad*. As such, Petitioner's refusal to cooperate fully and honestly to secure the necessary travel documents bars his release under the rules established by Zadvydas, Pelich, and Lema. Petitioner fails to meet his burden and, in accordance with Judge Donohue's R & R, this Court dismisses Petitioner's habeas petition.

Finally, even the latest information on Trinidad's decision, provided by the parties in August 2008, fail to change the ultimate outcome of the petition. First, the Government's Declaration indicates that Petitioner will likely obtain travel documents for removal to Trinidad in the reasonably foreseeable future. (See Decl. of A. Neil Clark.) Moreover, even if Trinidad were to deny Petitioner travel documents, thereby preventing Petitioner's removal for the immediate time being, Zadvydas, Pelich, and Lema dictate that Petitioner's lack of cooperation in procuring travel documents from Trinidad demonstrates that Petitioner cannot meet his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Further, such a conclusion will not effectively subject Petitioner to indefinite detention and raise due process concerns. The Lema Court noted that "[i]f Lema were to cooperate with the INS to dispel the Ethiopian government's confusion over his nationality, the Ethiopian government might issue travel documents in the reasonably foreseeable future." Lema, 341 F.3d at 857 n.9. The court further noted that even though it ruled that habeas relief cannot be granted under the circumstances of Lema, the petitioner Lema is "free to file another habeas petition if, after Lema cooperates fully and honestly with the INS to effect his removal, and a reasonable time period then elapses without result, Lema's removal is not significantly likely in the reasonably foreseeable future." Id. at 857.

Similarly, in Malkandi v. Mukasey, the petitioner was awaiting removal to his native country of Iraq. No. C07-1858, 2008 WL 916977, at *6 (W.D.Wash. January 31, 2008). According to the Government, the petitioner only needed to present certain documents, already in the Government's possession, to Iraq officials during an interview to obtain travel documents.

ORDER — 7

1  See id. The court found that the Iraq Embassy had stated its willingness to issue a travel
2  document for petitioner upon his request, but that petitioner had refused to request the travel
3  document and that this failure to cooperate was "the only impediment to petitioner's removal."
4  Id. at 6. The court dismissed the petitioner's habeas petition and held that "petitioner ha[d] the
5  keys to his freedom in his pocket and could likely effectuate his removal by simply asking the
6  Iraqi Embassy for assistance in obtaining travel documents. Accordingly, petitioner's detention
7  is not indefinite." Id. at *7.

8  Similar to the situations in Lema and Malkandi, if Trinidad denies travel documents to
9  Petitioner but Petitioner subsequently cooperates with Trinidad officials, Trinidad likely will
10 issue travel documents to Petitioner in the reasonably foreseeable future. (See Decl. of A. Neil
11 Clark.) In fact, Petitioner could easily obtain the necessary travel documents if he simply
12 asserted his Trinidad citizenship. (See Decl. of A. Neil Clark at 1.) Accordingly, the updated
13 information provided by the parties does not effect the outcome of this case.

**II.**

*Jurisdiction: May this Court Consider Petitioner's Citizenship Claim?*

16 Petitioner insists that he is a U.S. citizen and that his citizenship claim has not been
17 adjudicated by an Article III court. The Immigration Court presumably rejected Petitioner's
18 citizenship claim when it ordered his removal to Trinidad, the BIA dismissed his appeal of that
19 order, and the Ninth Circuit dismissed his Petition for Review. The actual details of the
20 citizenship determination, however, are not in the record, and questions necessarily arise
21 regarding the propriety of the citizenship determination. Thus, the threshold issue is whether
22 this Court may review Petitioner's claim to U.S. citizenship.

23 A claim to citizenship may be initiated in two ways: a declaration of citizenship may be
24 sought under 8 U.S.C. § 1503(a) or a claim may be brought under 8 U.S.C. § 1252(b)(5). Under
25 § 1503(a), an individual may seek a declaration of citizenship in any federal court. For instance,
26 an individual may affirmatively seek proof of his or her citizenship by filing an Application for

ORDER — 8

Citizenship with the U.S. Citizenship and Immigration Services (USCIS). Id. at 397. If the application is denied by USCIS, the individual may appeal to the Administrative Appeals Unit (AAU). Id. If he or she loses the appeal and has exhausted all administrative channels, 8 U.S.C. § 1503(a) provides that the individual may seek judicial declaration of citizenship. Id. Section 1503(a) provides that an individual may institute an action to declare citizenship in any court of the United States under 28 U.S.C. § 2201, "except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding . . . or (2) is in issue in any such removal proceedings." Id. at 397. Because the issue of Petitioner's citizenship arose in connection with a removal proceeding, this Court does not have jurisdiction under § 1503 to consider his citizenship. See Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 398 (5th Cir. 2007) (holding that § 1503 precludes district court jurisdiction over the petitioner's citizenship claim because the issue of his citizenship originated in connection with his removal proceeding).

Under § 1252(b)(5), district courts have jurisdiction over petitioners' challenges to final orders of removal, but "[t]he sole and exclusive avenue" for review of a nationality claim is by direct petition for review to the Court of Appeals. See Taniguchi v. Schultz, 303 F.3d 950, 955 (9th Cir. 2002) (holding that under 8 U.S.C. § 1252(b)(5) a claim of U.S. nationality must be brought in the circuit court); see Cartagena-Paulino v. Reno, No. 00 Civ. 2371, 2003 U.S. Dist. WL 21436224, at *3 (S.D.N.Y. June 20, 2003) (finding that the sole and exclusive method for review of a claim of nationality is by petition for review to the Court of Appeals). Upon circuit court review of the petition, "[i]f the petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim." 8 U.S.C. § 1252(b)(5)(A). But if "the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States . . . for a new hearing on the nationality claim . . .". 8 U.S.C. §

ORDER — 9

1252(b)(5)(B). Petitioner has already pursued this avenue and failed when the Ninth Circuit dismissed his petition for review. As such, this Court does not have jurisdiction to consider Petitioner's citizenship claim under § 1252(b)(5) or under § 1503(a).

**III.**

*Response to Petitioner's Judicial Notice Referring to* Thompson v. INS

Petitioner filed a Motion for Judicial Notice directing the Court's attention to the case Thompson v. I.N.S., No. 02-0817, 2002 U.S. Dist. LEXIS 23936 (E.D. La. Sept. 13, 2002). Petitioner claims that Thompson, a post-removal detention case in which that district court granted petitioner Thompson's petition and released him, "bears a resemblance to the facts of this case." (Pet'r's Mot. for Judicial Notice at 1). However, not only is Thompson not binding on this Court, it is distinguishable. In Thompson, the petitioner was awaiting removal to Guyana, his native country, after the Government requested travel documents from Guyana. Id. at 3. The court held that there was no significant likelihood that removal would occur in the reasonably foreseeable future and ordered his release. Id. at 17. Unlike here, there was no indication in Thompson of any lack of cooperation on Thompson's part. In fact, Thompson "[has] a country, Guyana, to which he can be and wants to be repatriated." Id. at 14. Conversely, Petitioner in the instant case has failed to cooperate with removal proceedings and in fact has actively hindered his removal to Trinidad. As discussed, such failure to cooperate triggers the rule in Pelich and Lema that prevents a petitioner from meeting his burden. Therefore, Thompson is not applicable.

**IV.**

*Response to Petitioner's Various Arguments in his Opposition to the R & R*

Petitioner presents various other arguments in his Opposition, most of which are conclusory and unsubstantiated. The following details Petitioner's major arguments and the reasons this Court rejects them.

First, Petitioner asserts that an evidentiary hearing is necessary. Petitioner purports to

ORDER — 10

have evidence that Trinidad denied travel documents to him. (See Amended Opp'n to the R & R at 20.) Petitioner also seeks to put in evidence of his citizenship. (See id. at 4-5. An evidentiary hearing, however, is unnecessary in this case. Even if Petitioner can establish through an evidentiary hearing that Trinidad has denied his entry (which contradicts the latest information from ICE and the Trinidad Embassy) his lack of cooperation in procuring the necessary documents bars his release under Pelich and Lema. Accordingly, an evidentiary hearing on this subject is unnecessary. With respect to Petitioner's citizenship claim, this Court lacks jurisdiction—as discussed above—to hold an evidentiary hearing to determine Petitioner's citizenship.

Second, Petitioner asserts that 1) the Government claimed Petitioner acted to prevent his removal on the ground that he threatened to sue the Trinidad government and 2) that courts repeatedly reject such a basis for lack of cooperation. (Amended Opp'n to the R & R at 27.) First, the Government primarily contends that Petitioner's continued refusal to acknowledge his Trinidad citizenship constitutes lack of cooperation; Petitioner's threat to sue the Trinidad Embassy is a secondary example of his lack of cooperation. (See Resp't's Return and Mot. to Dismiss at 11.) Additionally, even if Petitioner's assertion were true, the cases he cites are unrelated and some have been overruled. The issue in Omar v. I.N.S., No. 02-1387, 2003 U.S. Dist. LEXIS 5982, at *2 (D. Minn. Apr. 8, 2003) is whether the Zadvydas rule applies to excludable/inadmissible aliens; the issue in Arevalo v. Ashcroft, 260 F.Supp.2d 347, 349 (D. Mass. 2003) is whether seeking a stay of deportation pending an appeal before the Court of Appeals constituted "an act to prevent removal;" in Farah v. I.N.S., No. 02-4725, 2003 U.S. Dist. LEXIS 1814, at *11 (D. Minn. Jan. 29, 2003) , the court was "asked to review the INS's statutory interpretation that allowed for the execution of Petitioner's deportation, a pure matter of law." Accordingly, the cited cases are unrelated to the issue of whether threats to sue properly constitute lack of cooperation. Petitioner's position is unsubstantiated.

**V.**

ORDER — 11

*Petitioner's Motion for Sanctions*

Petitioner urges the Court to sanction the Government under Rule 11 of the Federal Rules of Civil Procedure, but his motion is denied for several reasons. Petitioner moved for sanctions within his Opposition to the R & R. Rule 11(c)(2) requires that "[a] motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Additionally, Rule 11(c) requires that "notice and a reasonable opportunity to respond" and a "safe harbor" of twenty-one days to correct any alleged violations be afforded to the accused party. Id. 11(c)(1)-(2). As such, Petitioner will need to file a separate motion for sanctions—after providing notice and a reasonable opportunity to respond—if he wishes to continue pursuing sanctions. However, the motion for sanctions itself is unsupported. Petitioner grounds his motion for sanctions primarily in accusations that the Government failed to notify the Court that Trinidad has allegedly completed its investigation and denied travel documents to Petitioner. Again, the facts indicate that this accusation is without merit, as it appears that Trinidad has not (or, at most, has not yet) denied documents to Petitioner. (See Decl. of A. Neil Clark at 1-2.) Therefore, sanctions will not be imposed.

*Petitioner's Motion for Leave to File a Surreply*

On September 9, 2008, Petitioner filed his Motion that the Court Allows him to Provide a Rebuttal to the Supplemental Response by the Respondent & Rebuttal, which the Court interprets as a Motion for Leave to File a Surreply. (Dkt. No. 36.) Pursuant to local rules, a surreply may only be filed on the limited issue of a request to strike. CR 7(g)(2). Petitioner's motion falls outside the scope of this rule and it is, therefore, DENIED.

**Conclusion**

Petitioner has been detained beyond the Zadvydas presumptive post-removal period of six months. Petitioner fails, however,to meet his burden of showing no significant likelihood of removal in the reasonably foreseeable future, as his refusal to cooperate fully and honestly to secure travel documents bars his release under the rules established by Pelich and Lema. As

ORDER — 12

such, the Court ADOPTS the R & R and Petitioner's petition for writ of habeas corpus must be dismissed. Additionally, Petitioner's Motion for Sanctions against the respondent is DENIED.

The clerk is directed to send copies of this order to all counsel of record and to send a copy by mail to Petitioner.

Filed this 18th day of September, 2008

.

/s/ Marsha J. Pechman
Marsha J. Pechman
United States District Judge

ORDER — 13